IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

TONYA LEE HORNYAK, )
)
       Plaintiff, )
)
  v. ) Civil Action No. 15-74-E
)
)
CAROLYN W. COLVIN, ACTING )
COMMISSIONER OF SOCIAL SECURITY, )
)
       Defendant. )

O R D E R

AND NOW, this 30th day of March, 2016, upon consideration of the parties' cross-motions for summary judgment, the Court, upon review of the Commissioner of Social Security's final decision, denying Plaintiff's claim for disability insurance benefits under Subchapter II of the Social Security Act, 42 U.S.C. § 401, et seq., and denying Plaintiff's claim for supplemental security income benefits under Subchapter XVI of the Social Security Act, 42 U.S.C. § 1381, et seq., finds that the Commissioner's findings are supported by substantial evidence and, accordingly, affirms. See 42 U.S.C. § 405(g); Jesurum v. Secretary of U.S. Dep't of Health & Human Servs., 48 F.3d 114, 117 (3d Cir. 1995); Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir. 1992), cert. denied sub nom., 507 U.S. 924 (1993); Brown v. Bowen, 845 F.2d 1211, 1213 (3d Cir. 1988); see also Berry v. Sullivan, 738 F. Supp. 942, 944 (W.D. Pa. 1990) (if supported by substantial evidence, the Commissioner's decision must be affirmed, as a

federal court may neither reweigh the evidence, nor reverse, merely because it would have decided the claim differently) (citing Cotter v. Harris, 642 F.2d 700, 705 (3d Cir. 1981)).[1]

---

[1] Plaintiff argues that the Administrative Law Judge ("ALJ") erred by failing to base his residual functional capacity assessment ("RFC") on substantial evidence because: (1) the record contained no medical expert opinion addressing Plaintiff's physical limitations; (2) he relied improperly on Plaintiff's activities of daily living in formulating his physical RFC; and (3) he did not fully develop the record in order to make his physical and mental RFC properly. The Court disagrees and finds that substantial evidence supports the ALJ's findings as well as his ultimate determination of Plaintiff's non-disability.

At the outset, the Court notes that Plaintiff's argument is based on a mistaken understanding of Doak v. Heckler, 790 F.2d 26 (3d Cir. 1986). As this Court has previously explained, the Doak decision does not hold that an ALJ's RFC findings must be based on a specific medical opinion. See Doty v. Colvin, 2014 WL 29036 (W.D. Pa. Jan. 2, 2014); Callahan v. Colvin, 2014 WL 7408700 (W.D. Pa. Dec. 30, 2014). Instead, the Court of Appeals in Doak simply held that nothing in the particular record of that case supported the ALJ's finding that the plaintiff could perform light work. The Court of Appeals did not suggest that a finding of ability to perform light work could only be made if an opinion had clearly stated that the claimant could perform such work.

Furthermore, it is well-established that "[t]he ALJ—not treating or examining physicians or State agency consultants—must make the ultimate disability and RFC determinations." Chandler v. Comm'r of Soc. Sec., 667 F.3d 356, 361 (3d Cir. 2011); see also 20 C.F.R. §§ 404.1527(d)(2), 404.1546(c), 416.927(d)(2), 416.946(c); S.S.R. 96-5p, 1996 WL 374183 (S.S.A. 1996). "There is no legal requirement that a physician [must] have made the particular findings that an ALJ adopts in the course of determining an RFC." Titterington v. Barnhart, 174 Fed. Appx. 6, 11 (3d Cir. 2006); see also Chandler, 667 F.3d at 362 (holding that every fact incorporated into an RFC need not have been found by a medical expert). Moreover, the Court of Appeals in Titterington clearly noted that "[s]urveying the medical evidence to craft an RFC is part of the ALJ's duties." 174 Fed. Appx. at 11. Therefore, Doak does not prohibit an ALJ from making a certain RFC assessment just because no doctor has specifically made the same findings. See Hayes v. Astrue, 2007 WL 4456119, at *2 (E.D. Pa. Dec. 17, 2007). Under the facts of that case, the Court of Appeals simply made a substantial evidence finding in light of a limited record; it did not create a new rule that an RFC determination must be based on a specific medical opinion. Finally, this general understanding has been confirmed by subsequent Third Circuit case law. See Mays v. Barnhart, 78 Fed. Appx. 808, 813 (3d Cir. 2003).

In fact, an RFC is properly based on all of the relevant evidence in a case record, and an ALJ is not limited to choosing between competing opinions in the record, but may instead develop his own. See 20 CFR §§ 404.1545, 404.1546(c), 416.945, 416.946(c). Thus, an ALJ

is not required to rely only on a particular physician's opinion, and an RFC finding is actually an administrative—rather than a medical—determination. See 96-5p, 1996 WL 374183, *5. Furthermore, although reliance on physicians' opinions is common, "the regulations do not require ALJs to seek outside expert assistance." See Chandler, 667 F.3d at 362.

In the present case, the Court finds that substantial evidence supports the ALJ's RFC assessment, which properly addressed both physical and mental limitations, and which found that Plaintiff could perform a range of light, low stress, simple, routine work with limited personal interactions and with additional limitations. (R. 17). The ALJ's decision discussed the record evidence at significant length, including Plaintiff's testimony, her medical records, and consultative examination evidence. In reaching his conclusion, the ALJ explained that, after review of the testimony and objective evidence in the record, numerous inconsistencies eroded Plaintiff's credibility, and the evidence as a whole simply did not support her disability claims. (R. 24). For instance, the ALJ stated that Plaintiff reports having back and left knee pain, but the record showed only conservative treatment for any such pain on an inconsistent basis. (R. 24). The ALJ stated that the treatment records from Deborah Bishop, M.D., who treated Plaintiff during the period under consideration, revealed that x-rays of Plaintiff's cervical spine were normal in September, 2010. (R. 21). In April, 2012, Dr. Bishop reported normal motor strength in Plaintiff's arms and legs with intact sensation, normal symmetrical reflexes, and normal gait. (R. 22). Also at that time, Plaintiff reported to Dr. Bishop that she had good relief from pain, although she said that her medication was wearing off before the next dose was due. (R. 22). The ALJ noted that Dr. Bishop therefore increased Plaintiff's methadone dose, and that there are no further treatment records. (R. 22).

The ALJ also remarked that Plaintiff failed to attend the consultative physical examination which had been scheduled to determine the extent of these reported impairments. (R. 24). Subsequent to that missed examination, however, Plaintiff sought treatment from two additional sources, and treatment records from those sources were included in the record here and were reviewed and discussed by the ALJ. Nevertheless, the ALJ remarked that those later examinations at Elk Valley Medical Center and Esper Treatment Center also provided no objective evidence of musculoskeletal limitations. (R. 24). In reviewing the evidence, the ALJ also described Plaintiff's various activities of daily living, including the fact that she acts as the primary caregiver for her young child and also cares for her toddler grandchild, apparently without difficulty. (R. 18, 24). The ALJ also noted that Plaintiff reported being able to "walk for a pretty good bit," and that she felt that "[a]nxiety is the main issue for disability." (R. 19). He also observed that Plaintiff drives locally, which includes taking her son to school and to doctors' appointments, and going shopping. (R. 18). Additionally, the ALJ explained that, although Plaintiff reports suffering from depression with anxiety (which allegedly limits her social functioning and impairs her memory and concentration), she has not consistently sought formal psychiatric treatment. (R. 24). The ALJ further mentioned that, although Plaintiff claims that she has no friends and that she remains isolated, she is able to go to Esper Treatment Center daily in order to obtain her methadone doses. (R. 24). Also, Plaintiff was apparently

frequenting a health club at one time, since the treatment records of Dr. Bishop indicate that she had injured her left knee there on a treadmill.  (R. 24).  Finally, the ALJ found that Plaintiff "has minimized her substance abuse, avoiding questions about drug and alcohol use, and even denying that she ever used alcohol" at her intake appointment at Elk Valley Medical Center. (R. 24).

The ALJ also reviewed the medical opinion evidence, including that provided by Byron Hillin, Ph.D., who performed a consultative psychological examination of Plaintiff.  Dr. Hillin found Plaintiff to have "no limitation in understanding, remembering and carrying out short, simple instructions or even detailed instructions and she would have no difficulty making simple work-related decisions."  (R. 25).  However, Dr. Hillen did find that Plaintiff would have "slight limitation in dealing with others, adjusting to changes in the workplace and dealing with workplace stress."  (R. 25).  The ALJ gave Dr. Hillin's opinion "considerable weight" in formulating Plaintiff's RFC because his "observations are consistent with his opinion and with the observations of other treating physicians."  (R. 25).

Furthermore, in his decision, the ALJ described the findings and opinions from Safe Harbor, as well as from Esper Treatment Center, where Plaintiff sought treatment after the date of her missed consultative examination.  In considering that evidence, the ALJ explained that he ultimately gave "little weight" to the records from Safe Harbor because they were based in great part on Plaintiff's self-reported symptoms without the disclosure of her substance abuse. (R. 25).  The ALJ did, however, give "appropriate weight" to the objective findings from Safe Harbor showing Plaintiff "interacting appropriately with her child, demonstrating clear memory and denying that she would harm herself because of her children despite any alteration in mood." (R. 25).  Likewise, the ALJ stated that he gave "little weight" to the evidence from Esper Treatment Center, since it reported serious symptoms without "acknowledg[ing] any mental health symptoms or physical symptoms in the multi-axial assessment."  (R. 25).

Moreover, the ALJ expressly stated that "no treating or examining physician has expressed any opinion regarding [Plaintiff's] physical capacity to perform work-related activities."  (R. 24).  As noted, supra, the state agency did in fact schedule a consultative examination with state agency physician Abu N. Ali, M.D., but Plaintiff failed to appear for that appointment.  (R. 24-25).  As a result, Dr. Ali reviewed the objective evidence, but "found insufficient evidence to determine disability based on a physical impairment" due to Plaintiff's failure to cooperate.  (R. 24-25, 71-72).  Additionally, nothing in the record indicates that Plaintiff or her counsel requested a new examination date, nor have Plaintiff or her counsel provided any explanation for her failure to appear.  Furthermore, at no point during the administrative hearing itself—during which Plaintiff was represented by, and questioned by, counsel—did Plaintiff or her counsel take the opportunity to explain why Plaintiff had neglected to attend her consultative examination.  Under the regulations, Plaintiff's application could have been denied outright for her failure to appear at her examination.  See 20 C.F.R. §§ 404.1518(a), 416.918(a) (advising a claimant, "If you are applying for benefits and do not

have a good reason for failing or refusing to take part in a consultative examination or test which we arrange for you to get information we need to determine your disability or blindness, we may find that you are not disabled or blind."); 20 C.F.R. §§ 404.1520b(d), 416.920b(d) (stating to a claimant that, if efforts are made to obtain evidence, but "the evidence is insufficient to determine whether you are disabled, we will make a determination or decision based on the evidence we have."). However, rather than denying Plaintiff benefits based on her failure to participate in her scheduled examination, as he could have done, the ALJ considered Plaintiff's failure to attend the examination in connection with her credibility. See Watters v. Colvin, 2014 WL 1268566, at *9 (M.D. Pa. Mar. 26, 2014) (affirming the ALJ's decision where the failure to attend a consultative examination was considered in analysis of the claimant's credibility).

Thus, the Court finds that the ALJ's physical (and mental) RFC is supported by substantial evidence, including testimony and medical evidence, and the ALJ was not required to rely on a physician's opinion in order to formulate his physical RFC.

Second, Plaintiff contends that the ALJ relied improperly on Plaintiff's activities of daily living in formulating his physical RFC. It is true that the ALJ relied in part on Plaintiff's activities of daily living in making his RFC assessment, as he is permitted to do. See 20 C.F.R. §§ 404.1529(c)(3)(i), 416.929(c)(3)(i). While Plaintiff cites one particular summarizing sentence as the basis for her argument that the ALJ considered only her activities of daily living in making his RFC, the Court must read the ALJ's decision as a whole to determine whether there was "'sufficient development of the record and explanation of findings'" to decide whether the ALJ has reached a decision that is supported by substantial evidence. Rivera v. Comm'r of Soc. Sec., 164 Fed. Appx. 260, 262 (3d Cir. 2006) (quoting Jones v. Barnhart, 364 F.3d 501, 505 (3d Cir. 2004)). As discussed at length, supra, the ALJ relied on much more than Plaintiff's daily activities alone in formulating his physical RFC, as he also considered testimony and medical evidence. (R. 18-25). Therefore, Plaintiff's second argument, that the ALJ erroneously relied only on Plaintiff's activities of daily living in formulating his physical RFC, is simply meritless.

Lastly, Plaintiff claims that the ALJ failed to fully develop the record because it was obvious that documentation was missing and the ALJ should have sought out additional evidence before making his decision. Specifically, Plaintiff argues that the ALJ should have attempted to obtain possible additional records from Elk Valley Medical Center and from Esper Treatment Center. Plaintiff also contends that the ALJ should have tried to obtain records regarding injections Plaintiff apparently underwent in 2009, as well as any records that might exist from Dr. Costa (to whom Plaintiff was referred by a doctor from Elk Valley Medical Center).

It is true that an ALJ has a duty to develop a full and fair record in a Social Security case. See Ventura v. Shalala, 55 F.3d 900, 902 (3d Cir. 1995); Carmichael v. Barnhart, 104 Fed. Appx. 803, 805 (3d Cir. 2004). In this case, however, the ALJ clearly fulfilled his duty. At the

administrative hearing, the proposed exhibits (1A through 12F), which included Plaintiff's medical records, were admitted into evidence and made a part of the record. (R. 37). Also at that time, *the ALJ specifically asked Plaintiff's attorney whether there was any outstanding medical evidence that the attorney was aware of, and the attorney indicated that there was none*. (R. 37). Furthermore, nothing in the record indicates that Plaintiff or her counsel communicated at any point to the ALJ that certain evidence was missing, nor did Plaintiff's counsel ever indicate to the ALJ that his assistance was needed in order to obtain additional records. See 20 C.F.R. §§ 404.950(d), 416.1450(d).

In fact, the treatment documentation in the record from Elk Valley Medical Center and Esper Treatment Center was submitted by Plaintiff's attorney herself. Also, while Plaintiff now complains that "[d]espite requesting all records from Esper Treatment Center from 2010 to 2013, the facility only submitted 7 pages for the record," Plaintiff previously indicated that she did not know of any missing evidence, nor did she ask for help from the ALJ in obtaining any missing evidence. (Doc. No. 11, at 13). As for the 2009 injections at issue, Plaintiff has not provided information regarding such injections, either to the ALJ or in her previously submitted Disability Reports. (R. 178-80, 211-14). Regarding possible records from Dr. Costa, while the intake report from Elk Valley Medical Center indicates that she was referred to Dr. Costa for pain management, nothing in the record indicates whether Plaintiff ever went to see him. (R. 389).

Finally, Plaintiff, in essence, declines to clearly explain what specific records—which she complains the ALJ did not seek—actually exist. Instead, Plaintiff points to instances where the ALJ noted in his decision that evidence concerning various treatments was not in the record, and she implies that additional relevant evidence may exist and should have been sought. For example, Plaintiff claims that "she may have been assessed with memory and concentration issues at Esper, but the records are missing." (Doc. No. 11, at 14). Plaintiff states that the ALJ mentioned Plaintiff's 2009 lumber injections, but protests that he noted the lack of any documentation regarding such treatment. (Doc. No. 11, at 13). Plaintiff notes that the ALJ cited "treatment with" (actually, referral to) Dr. Costa, but complains that there were no treatment records regarding Dr. Costa in evidence. (Doc. No. 11, at 13). Quite simply, the ALJ cannot be expected to seek out evidence, when he does not know whether such evidence exists, *particularly after Plaintiff's attorney herself informed the ALJ that she was unaware of any outstanding evidence in existence*. Once Plaintiff's attorney informed the ALJ that the record before him contained all known medical evidence, the ALJ was not then required to drop everything and attempt to locate additional evidence in order to investigate claims made by Plaintiff for which she had failed to provide support, just because the ALJ noted that Plaintiff had not provided supporting documentation for such claims. Plaintiff and her attorney had the burden to obtain the evidence she wished to submit in support of her claim. See 20 C.F.R. §§ 404.1512(a), 404.1740(b)(1), 416.912(a), 416.1540(b)(1). Nothing in the record, therefore, demonstrates that the ALJ failed to fulfill his duty to more fully develop the record in this case.

Based on the evidence of record, therefore, the Court finds that the ALJ thoroughly

Therefore, IT IS HEREBY ORDERED that Plaintiff's Motion for Summary Judgment (Doc. No. 9) is DENIED and Defendant's Motion for Summary Judgment (Doc. No. 12) is GRANTED.

          s/Alan N. Bloch
          United States District Judge

ecf:    Counsel of record

---

discussed his consideration of all the relevant evidence—including Plaintiff's daily activities of living, her course of medical treatment including opinion evidence, and the credibility of her testimony overall—and made an appropriate RFC determination, which included several limitations stemming from her impairments. The Court finds, additionally, that the ALJ did not fail to fully develop the record in this case. In conclusion, the Court finds that substantial evidence supports the ALJ's ultimate determination that Plaintiff retains the ability to perform work consistent with his RFC finding. Accordingly, the Court affirms.